**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PEDRO TIUL-CHUB, | |
| Petitioner, | |
| v. | CIVIL ACTION NO.  26-2402 |
| J.L. JAMISON, *et al.*, | |
| Respondents. | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                  **April 15, 2026**

Petitioner Pedro Tiul-Chub is yet another individual whom the government subjected to mandatory detention based on its newly adopted interpretation of Section 235 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1225. Tiul-Chub, a citizen of Guatemala, was detained by the Department of Homeland Security ("DHS") while accompanying his friend to the Montgomery County Courthouse. Tiul-Chub has filed a 28 U.S.C. § 2241 petition, arguing that his prolonged detention without a bond hearing is based upon an unlawful interpretation of 8 U.S.C. § 1225(b)(2), violates the Administrative Procedures Act ("APA"), and denies him due process.[1] The Court agrees that the mandatory detention provided for in 8 U.S.C. § 1225(b)(2) does not apply to Tiul-Chub because of his well-established residence in the United States. Consistent with the reasoning of hundreds of other rulings in this District,[2] this Court will grant Tiul-Chubb's petition.

---

[1] Pet. [Doc. No. 1].

[2] *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025)*; Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)*; Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)*; Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025)*; Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1,

## I.    BACKGROUND

Tiul-Chub is a twenty-one-year-old native of Guatemala who entered the United States without inspection through the Southern Border in 2022.[3] Shortly after his entry, Tiul-Chub encountered DHS officers and was transported to a shelter for minors.[4] The DHS released him from the shelter, and he went on to live with his grandfather in Norristown, Pennsylvania, where he obtained jobs in different industries including landscaping and construction.[5] In 2024, Tiul-Chub received a Notice to Appear in removal proceedings, charging him with having entered the United States without admission or parole.[6] Tiul-Chub has adhered to the conditions of his removal proceedings.[7] Until his recent detention, he was also working with an attorney to prepare applications for asylum and special immigrant juvenile status.[8] With respect to removal proceedings, Tiul-Chub's next hearing is scheduled on April 20, 2026, at 1:30 p.m.[9]

---

2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). Since then, numerous additional decisions have ruled against the government. *See, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-0462, 2026 WL 413439, at *1 (E.D. Pa. Feb. 13, 2026) (identifying that all 201 decisions in this District have rejected the government's position). Among this District's most recent decisions are *Hernandez Vicente v. Jamison*, No. 26-2045, 2026 WL 947822 (E.D. Pa. Apr. 7, 2026); *Qurbonov v. Jamison*, No. 26-2002, 2026 WL 937930 (E.D. Pa. Apr. 7, 2026); *Bautista Espinoza v. Jamison*, No. 26-2199, 2026 WL 935440 (E.D. Pa. Apr. 7, 2026); *Rosario Espinal v. Jamison*, No. 26-2005, 2026 WL 908918 (E.D. Pa. Apr. 2, 2026); and *Torres Jimenez v. McShane*, No. 26-1871, 2026 WL 811680 (E.D. Pa. Mar. 24, 2026).

[3] Pet. ¶¶ 1, 17, 18 [Doc. No. 1].

[4] *Id.* ¶ 18.

[5] *Id.* ¶¶ 18-19.

[6] Pet., Ex. 4 [Doc. No. 1-7].

[7] Pet. ¶ 20 [Doc. No. 1].

[8] *Id.*

[9] *Id.*; Pet., Ex. 1 [Doc. No. 1-4].

On or about April 8, 2026, while Tiul-Chub was accompanying a friend to the Montgomery County Courthouse, DHS officers arrived and arrested Tiul-Chub's friend.[10] The officers had not initially sought to arrest Tiul-Chub, but they discovered he was undocumented and then detained him.[11] As alleged in the petition, the officers "took Tiul-Chub into custody with no prior notice or opportunity to contest his detention."[12] He is currently held at the Philadelphia Federal Detention Center ("FDC") and has not been provided a bond hearing.[13] Tiul-Chub's detention results from Respondents' revised interpretation of 8 U.S.C. § 1225(b)(2)(A), under which they suggest that individuals who have been long-present in the United States without lawful status are "applicant[s] for admission" and thus subject to detention without a bond hearing.[14]

On April 13, 2026, Tiul-Chub petitioned for a writ of habeas corpus under 28 U.S.C. § 2241.[15] Consistent with its established practice for recent cases involving individuals detained by the DHS under 8 U.S.C. § 1225(b)(2), this Court ordered Respondents to show cause why Tiul-Chub's petition should not be granted.[16] It also scheduled a show cause hearing.[17] By stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the papers, as the parties requested.[18]

---

[10] Pet. ¶¶ 2, 21 [Doc. No. 1].

[11] *Id.* ¶ 21.

[12] *Id.*

[13] *Id.* ¶ 22; Pet., Ex. 2 [Doc. No. 1-5].

[14] *See* Pet. ¶ 23 [Doc. No. 1]; Answer at 3 [Doc. No. 4]; 8 U.S.C. § 1225(b)(2)(A).

[15] Pet. [Doc. No. 1].

[16] 4/13/26 Order [Doc. No. 3].

[17] *Id.*

[18] 4/14/26 Stipulation and Order [Doc. No. 5].

## II.    LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[19] It is the petitioner's burden to show that the detention violates the Constitution or federal law.[20]

## III.    DISCUSSION

The decisive issue in this case is whether the mandatory detention provided for in 8 U.S.C. § 1225(b)(2) extends to noncitizens who, despite not being admitted or paroled, have an established presence in the United States.[21] As the parties acknowledge, courts in this District have confronted this question repeatedly and exhaustively.[22] On all occasions, the decisions rendered in this District have rejected Respondents' position and found that 8 U.S.C. § 1225(b)(2) does not cover noncitizens who, though subject to removal proceedings, have been well-established in the country.[23] Even so, "[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case at issue."[24]

---

[19] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

[20] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

[21] The government does not contest whether this Court has jurisdiction to review Tiul-Chub's petition. In any event, the Court has jurisdiction, as the various INA jurisdiction-stripping statutes, *see, e.g.*, 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. § 1252(b)(9), do not apply. *See Yilmaz*, 2025 WL 3459484, at *2 (concluding that the jurisdiction-stripping statutes are not germane because the petitioner "challenges his detention rather than the initiation of removal proceedings, because [the petitioner] cannot obtain relief for his detention following a final order regarding removal, and because [the petitioner's] detention is not the byproduct of a discretionary determination").

[22] *See* Pet. ¶ 25 [Doc. No. 1]; Answer at 2 [Doc. No. 4].

[23] *See* Pet. ¶ 25 [Doc. No. 1]; Answer at 2 [Doc. No. 4]; *supra* n.1.

[24] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

8 U.S.C. § 1225(b)(2)(A) provides as follows:

**(2)    Inspection of other aliens**

**(A)    In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

In arguing why this Court should diverge from its interpretation of § 1225(b)(2)(A) in prior decisions, Respondents cite the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*[25] and the Eighth Circuit's recent decision in *Avila v. Bondi*.[26] Respondents stress that, in those cases, the courts held that "seeking admission" was not a separate requirement from the condition that the individual be an "applicant for admission."[27]

However, the Court need not defer to, and indeed rejects, the reasoning of *Buenrostro-Mendez* and *Avila*. The term "seeking admission," by its plain meaning, connotes present, ongoing action.[28] "Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States."[29] An "applicant for admission" who is "seeking admission" must therefore be a noncitizen at a port of entry seeking to cross into the United States.[30] Respondents' reading would render the term "seeking admission" entirely

---

[25] 166 F.4th 494 (5th Cir. 2026).

[26] No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026).

[27] Answer at 3, 5-6 [Doc. No. 5].

[28] *See Kashranov*, 2025 WL 3188399, at *6 (" '[S]eeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization.").

[29] *Centeno Ibarra*, 2025 WL 3294726, at *5.

[30] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

superfluous.[31] Their reading would also clash with past agency practice and the canon of constitutional avoidance.[32] As a result, the detention of noncitizens like Tiul-Chub is governed not by § 1225 but by § 1226(a) and corresponding regulations, which outline the prospect of detention for noncitizens who are subject to removal proceedings and entitle them to a bond hearing before continued detention is permitted.[33]

Section 1226(a)'s predominance over § 1225 is underscored by Congress's recent amendment of § 1226 in the Laken Riley Act. There, Congress adopted provisions demanding that a noncitizen be detained without a bond hearing if he enters the country illegally and is convicted or charged with certain kinds of crimes.[34] This amendment would be meaningless if, as Respondents suggest, § 1225 authorized detentions without a bond hearing irrespective of those criminal charges or convictions. Other provisions of § 1226 that reserve mandatory detention for when a noncitizen engages in criminal activity would likewise be superfluous on Respondents' reading.[35]

In summary, then, Tiul-Chub may be detained under the INA only if, pursuant to § 1226(a) and applicable regulations, he receives a bond hearing and the facts show that he poses

---

[31] *See Ndiaye*, 2025 WL 3229307, at *5 (determining that since Congress's " 'choice of words is presumed to be deliberate and deserving of judicial respect,' this Court must give meaning to the words 'an alien seeking admission.' " (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018)).

[32] *See id.* at *6 (noting that, since 1997, the DHS had applied § 1226(a) to inadmissible noncitizens residing in the United States); *id.* at *7 (an interpretation of § 1225 allowing for the mandatory detention of noncitizens who have long been present in the country would implicate constitutional questions of due process).

[33] *See Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond").

[34] Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary, theft, and larceny).

[35] *See, e.g.*, 8 U.S.C. § 1226(c)(1)(B) (requiring a noncitizen who is deportable because of criminal convictions to be detained).

a risk of flight or is a threat to the safety of his community.[36] Respondents do not argue that Tiul-Chub is likely to flee or that he is dangerous. Nor does the record illustrate any such concern—Tiul-Chub has been in the United States since 2022 and has worked in several professional industries without incident.[37] He has also complied with the conditions of his removal proceedings.[38] Accordingly, a bond hearing is unnecessary, and the Court will order Tiul-Chub's immediate release.[39]

Because Tiul-Chub's detention without a bond hearing violates the INA, the Court need not reach his APA and due process arguments.

**IV.   CONCLUSION**

For the foregoing reasons, the DHS had no legal authority to mandatorily detain Tiul-Chub without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). Accordingly, the Court will grant his petition and issue a writ of habeas corpus. An appropriate order will follow.

---

[36] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[37] Pet. ¶¶ 17, 19 [Doc. No. 1].

[38] *Id.* ¶ 20.

[39] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)).